# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-00714-REB-MJW

OSMAN NURI OZSUSAMLAR,

      Plaintiff,

v.

R. WILEY, Former Warden, USP-ADX Florence, CO,
BLAKE DAVIS, Warden, USP-ADX Florence, CO,
CHARLES DANIELS, Warden, USP-High Florence, CO,
K. JOHNSON, Associated Warden USP-ADX Florence, CO,
MR. SPROUL, H J, K Unit Manager, USP-ADX Florence, CO,
M. COLLINS, Administrative Remedy Coordinator, USP-ADX,
WILMAR HAYGOOD, J, K Unit Counselor USP-ADX, and
R. BRADFORD, SIS Agent USP-ADX,

      Defendants.

---

## DEFENDANTS' MOTION TO DISMISS

---

Defendants, through counsel, move to dismiss the claims raised against them in the second amended complaint filed by Plaintiff Osman Nuri Ozsusamlar ("Plaintiff"), Doc. 38. Fed. R. Civ. P. 12(b)(1) and (b)(6). The claims also should be dismissed as frivolous. 28 U.S.C. § 1915(g).

Plaintiff is an inmate in the custody of the Bureau of Prisons ("BOP") who was previously confined at the United States Penitentiary, Administrative Maximum, in Florence, Colorado ("ADX"). (He is presently confined at the United States Penitentiary – Atwater in California ("USP Atwater"). Doc. 38-1 at 31.) In his second amended complaint, he sues eight individual defendants, asserting multiple claims against each of them under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403

U.S. 388 (1971).  Docs. 38 & 38-1.  He also seeks declaratory and injunctive relief against several defendants who work at ADX.  *Id.*

## I.    PROCEDURAL HISTORY AND RELEVANT FACTUAL ALLEGATIONS.

On March 22, 2012, this case was transferred from the Southern District of New York because that court construed a letter Plaintiff had filed there as a civil action.  Doc. 1 at 1.  The letter, however, did not name any individuals.  Doc. 1-1; *see also* Doc. 2. On May 29, 2012, Plaintiff filed a prisoner complaint that finally named three individuals. Doc. 15.  Because the complaint was deficient, the Court directed Plaintiff to file two amended complaints.  Doc. 35.  The operative complaint is the second amended complaint.  Doc. 38.

Plaintiff, along with his father, was convicted of "conspiracy to commit murder for hire, murder for hire, and conspiracy to commit extortion."  *United States v. Ozsusamlar*, 349 F. App'x 610, 611 (2d Cir. 2009).  The Second Circuit affirmed his convictions.  *Id.* at 612.  For these offenses, Plaintiff was "sentenced to 188 months imprisonment." *Ozsusamlar v. United States*, 2012 WL 4473286, *3 (S.D.N.Y. Sept. 28, 2012).

During sentencing proceedings, the sentencing court concluded that an "upward adjustment" to Plaintiff's sentence was warranted because he had "'willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the … sentencing of the instant offense.'"  *United States v. Ozsusamlar*, 2007 WL 2456934, *6 (S.D.N.Y. Aug. 28, 2007) (quoting U.S.S.G. § 3C1.1).  Specifically, the sentencing court found that Plaintiff "wrote numerous letters to people outside prison in which he threatened or attempted to threaten the FBI Agents who had been witnesses at his trial, the AUSAs who had prosecuted him, and even this Court."  *Id.*

While Plaintiff continues to assert that Defendants violated criminal statutes, the Court previously ruled that he could not allege such claims. Doc. 26 at 3 (citing *Newcomb v. Ingle*, 827 F.2d 676 n.1 (10th Cir. 1987)).

Because Plaintiff asserts multiple claims against each defendant, for ease of reference each defendant will be discussed separately. A common feature to the allegations below is that they are conclusory and lack any factual support.

**Former ADX Warden Wiley:** On November 26, 2007, Wiley allegedly placed Plaintiff at ADX in violation of the Fifth Amendment. Doc. 38-1 at 1. On the same date, Wiley violated Plaintiff's Eighth Amendment rights because he was not provided with medical care and Wiley had the responsibility to protect him. *Id.* at 2. On or about the same date, Wiley also allegedly took his "legal work" and deprived him of "potential useful evidence." *Id.* These acts violate the Due Process Clause. *Id.*

In May 2008, Plaintiff's special administrative measure ("SAM") was lifted. *Id.* On September 22, 2008, Wiley allegedly violated Plaintiff's Eighth Amendment rights by using "false information to place on" him an unspecified management variable restriction. *Id.* at 2.

**Former ADX Warden Davis:** Between September 2009 and November 2011, Davis allegedly held Plaintiff at ADX even though he was a low security inmate, in violation of the Fifth Amendment. *Id.* at 5. Throughout the same period, Davis allegedly violated Plaintiff's Eighth Amendment rights by not providing medical for several ailments he suffered. *Id.* Plaintiff asserts in a conclusory fashion that Davis took his "legal work." *Id.* Plaintiff asserts that these acts violate the Due Process Clause. *Id.*

In May 2008, Davis apparently imposed "restrictions" on Plaintiff, which he claims violate his First Amendment rights. *Id.* at 6.

**Warden Daniels:** In October 2010, Daniels allegedly placed Plaintiff in D/B unit, the last phase of the ADX's step-down unit program, even though he was low security; did not provide medical care for several health conditions; in violation of Fifth and Eighth Amendments. *Id.* at 9. In May 2008, Daniels also apparently imposed "restrictions" on Plaintiff, which he claims violate his First Amendment rights. *Id.* at 10.

**Defendant K. Johnson:** In August 2005, Johnson allegedly directed inmates in New York to wear a wire-tap to record him, which supposedly led to his convictions. *Id.* at 13. He alleges violations of several amendments to the Constitution. *Id.* In November 2007, Johnson placed Plaintiff in unspecified conditions of confinement that violate the Eighth Amendment. *Id.* at 14.

**Defendant Sproul:** In November 2007, Sproul allegedly placed Plaintiff in H unit and took his "legal work" in violation of Fifth Amendment; Sproul also violated Plaintiff's Eighth Amendment rights because Sproul did not provide him with medical care for several conditions. *Id.* at 16-17.

**Defendant Collins:** In September 2008, Collins allegedly placed a management variable restriction in violation of the First and Eighth Amendments. *Id.* at 20.

**Defendant Haygood:** In September 2009, Haygood allegedly stole Plaintiff's legal discovery evidence in violation of the Fifth Amendment. *Id.* at 22.

**Defendant Bradford:** Bradford's alleged violations occurred on November 26, 2007. Doc. 38-1 at 24. Plaintiff asserts in a conclusory fashion that on that date, Bradford "illegally" placed Plaintiff in H unit at the ADX; took his "legal work"; and

4

deprived him of "potential useful evidence." *Id.* These acts violate the Due Process Clause. *Id.*

Plaintiff requests a variety of monetary damages against all Defendants. *Id.* at 28. He also requests declaratory relief that Defendants violated his constitutional rights. *Id.* Lastly, he requests injunctive relief against Wiley, Davis, Daniels, Johnson, Sproul, Collins and Haygood to "fix" his BOP file. *Id.* at 29.

## II. THE DECLARATORY AND INJUNCTIVE RELIEF REQUESTS ARE MOOT.

"Under Article III of the Constitution, federal courts may only adjudicate live controversies." *Fischbach v. N.M. Activities Ass'n*, 38 F.3d 1159, 1160 (10th Cir. 1994). "A case … becomes moot when intervening acts destroy a party's legally cognizable interest in the outcome of adjudication." *Tandy v. City of Wichita*, 380 F.3d 1277, 1290 (10th Cir. 2004). The burden to establish mootness "lies with the party asserting mootness." *Copar Pumice Co., Inc. v. Tidwell*, 603 F.3d 780, 792 (10th Cir. 2010) (quoting *Finstuen v. Crutcher*, 496 F.3d 1139, 1150 (10th Cir. 2007)).

Events occurring after the complaint has been filed may result in mootness. *Southern Utah Wilderness Alliance v. Smith*, 110 F.3d 724, 729 (10th Cir. 1997). A party's legal interest in the outcome of the case must be "more than simply the satisfaction of a declaration that a person was wronged." *Wirsching v. Colorado*, 360 F.3d 1191, 1196 (10th Cir. 2004). Courts have no authority "to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it." *Navani v. Shahani*, 496 F.3d 1121, 1127 (10th Cir. 2007). "The hallmark of a moot case or controversy is that the relief sought can no longer be given or is no longer needed." *Unified Sch. Dist. No. 259 v. Sedgwick*

*County, Kansas*, 491 F.3d 1143, 1150 (10th Cir. 2007) (quoting *N.M. Env't Dep't v. Foulston*, 4 F.3d 887, 889 (10th Cir. 1993)). "Where a plaintiff requests equitable relief, a mere showing that he maintains a personal stake in the outcome of the controversy is insufficient." *Jordan v. Sosa*, 654 F.3d 1012, 1024 (10th Cir. 2011).

A court may not order injunctive and declaratory relief if events occurring after a plaintiff files suit render the case moot. Regarding injunctive relief, "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects." *Chihuahuan Grasslands Alliance v. Kempthorne*, 545 F.3d 884, 891-92 (10th Cir. 2008) (quoting *Beattie v. United States*, 949 F.2d 1092, 1094 (10th Cir. 1991)). "Likewise, with respect to declaratory relief, [the court] look[s] beyond the initial controversy which may have existed at one time and decide[s] whether the facts alleged show that there is a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* "Thus, where a plaintiff seeks a declaratory judgment against his opponent, he must assert a claim for relief that, if granted, would affect the behavior of the particular parties listed in his complaint." *Jordan*, 654 F.3d at 1025.

Here, Plaintiff's declaratory and injunctive relief requests are constitutionally moot because if any relief were granted, it would not affect Defendants' behavior. Plaintiff requests declarations that Defendants violated his rights and an order directed to Wiley, Davis, Daniels, Johnson, Sproul, Collins and Haygood to "fix" his BOP file. Doc. 38-1 at 28-29. However, these requests for injunctive and declaratory relief are only directed to BOP officials at ADX, where he was previously housed. 654 F.3d at 1028. (He is now housed at USP Atwater. Doc. 38 at 2.) Therefore, Plaintiff has "not sued defendants

who are actually situated to effectuate any prospective relief that this court might afford him." *Sosa*, 654 F.3d at 1028. These officials, thus, "would not be responsible for" correcting his BOP file. *Id.* at 1030. In addition, the declarations would accomplish nothing more than "the satisfaction …that [Plaintiff] was wronged." *Wirsching*, 360 F.3d at 1196. Accordingly, the requests for injunctive relief should be dismissed without prejudice as constitutionally moot.

## III. THE MAJORITY OF PLAINTIFF'S *BIVENS* CLAIMS ARE TIME-BARRED.

"Statutes of limitations promote policies of repose." *Arnold v. Duchesne County*, 26 F.3d 982, 987 (10th Cir. 1994). As the Supreme Court has noted, statutes of limitations "are designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared." *Order of R.R. Tel. v. Ry. Express Agency, Inc.*, 321 U.S. 342, 348-49 (1944).

A claim accrues when the plaintiff is "first harmed." *Bergman v. United States*, 751 F.2d 314, 317 (10th Cir. 1984). *Bivens* actions are "subject to the statute of limitations of the general personal injury statute in the state where the action arose." *Indus. Constructors Corp. v. U.S. Bureau of Reclamation*, 15 F.3d 963, 968 (10th Cir. 1994). In Colorado, there is a two-year statute of limitations on suits for personal injuries. Colo. Rev. Stat. § 13-80-102. "[T]he statute of limitations on a *Bivens* claim begins to run when the plaintiff knows or has reason to know of the existence and cause of the injury which is the basis of his action." *Van Tu v. Koster*, 364 F.3d 1196, 1199 (10th Cir. 2004).

Here, the vast majority of the claims against Defendants are time-barred.[1]  The following claims against specific defendants accrued in August 2005, November 2007, May 2008, September 2008, and September 2009:  Wiley, Fifth/Eighth Amendments (11/07, 9/08); Davis, First/Fifth/Eighth Amendments (5/08, 9/09); Daniels, First Amendment (5/08); Johnson, First/Fifth/Eighth Amendments (8/05, 11/07); Sproul, Fifth/Eighth Amendments (11/07); Collins, First/Eighth Amendments (9/08); Haygood, Fifth Amendment (9/09); and Bradford, Fifth Amendment (11/07).  Doc. 38-1 at 1-24.

The dates above are the times when Plaintiff was "first harmed" by each respective defendant.  *Bergman*, 751 F.2d at 317.  The statute of limitations, thus, expired two years from those dates.  Based on his allegations, Plaintiff *knew* about the alleged violations as they happened.  For example, he knew he was being "illegally" held at ADX because he was continuously confined there.  However, he failed to file a complaint naming any individual defendants until May 29, 2012 (Doc. 16), more than two years from the time that his claims accrued.  *Saleh v. BOP*, 2009 WL 3158120, *3 (D. Colo. Sept. 29, 2009) (dismissing as time barred procedural due process claims because "plaintiffs were aware of the reasons for their transfer [but] … did not file their claim until after the limitations period had run").

Accordingly, because Plaintiff failed to timely file the majority of his *Bivens* claims within two years from their accrual, these claims are untimely.  Therefore, dismissal is warranted.

---

[1] The only timely claims are Plaintiff's Fifth and Eighth Amendment claims against defendants Davis and Daniels.

## III. DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY.

### A. Applicable Legal Standards.

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Lane v. Simon*, 495 F.3d 1183, 1186 (10th Cir. 2007). While the Court must accept as true the well-pleaded factual allegations of the complaint and must construe them in the light most favorable to the plaintiff, *Grossman v. Novell, Inc.*, 120 F.3d 1112, 1118 (10th Cir. 1997), "[i]t is not . . . proper to assume that the [plaintiff] can prove facts that [he] has not alleged . . . " *Associated Gen. Contractors v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983) (quoted in *Twombly*, 550 U.S. at 563 n.8).

"[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). To assess the plausibility of a claim for relief, the Court must evaluate whether the alleged facts plausibly establish the legal elements of the claim Plaintiff attempts to plead. *Id.* at 678, 682-83. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Allegations that are compatible with lawful behavior do not plausibly suggest an entitlement to relief. *Id.* at 680. Allegations that merely assert legal conclusions are not entitled to the presumption of truth. *Id.* at 681.

**B. Plaintiff Bears a Heavy Burden to Overcome Defendants' Assertion of Qualified Immunity.**

Government officials performing discretionary functions generally are granted qualified immunity and are shielded from liability for civil damages when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Wilson v. Layne*, 526 U.S. 603, 609 (1999) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *Romero v. Fay*, 45 F.3d 1472, 1475 (10th Cir. 1995). The primary purpose of qualified immunity is "to protect [public officials] from undue interference with their duties and from potentially disabling threats of liability." *Elder v. Holloway*, 510 U.S. 510, 514 (1994) (citation omitted). "If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." *Saucier v. Katz*, 533 U.S. 194, 202 (2001). Qualified immunity is immunity from suit, not merely from liability. *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

*Bivens* liability "must be based on personal involvement in the alleged constitutional violation." *See Foote v. Spiegel*, 118 F.3d 1416, 1423-24 (10th Cir. 1997). In a civil rights action, there is no *respondeat superior* liability and supervisors may not be liable solely because of their position. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986); *McKee v. Heggy*, 703 F.2d 479, 483 (10th Cir. 1983). "Because vicarious liability is inapplicable to ... §1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676; *see also Jenkins v. Wood*, 81 F.3d 988, 994 (10th Cir. 1996).

10

The "plaintiff must show an 'affirmative link' between the supervisor and the violation, namely the active participation or acquiescence of the supervisor in the constitutional violation by the subordinates." *Serna v. Colo. Dep't of Corrections*, 455 F.3d 1145, 1151 (10th Cir. 2006) (citations omitted); *see also Kite v. Kelley*, 546 F.2d 334, 337 (10th Cir. 1976) (citing *Rizzo v. Goode*, 423 U.S. 362, 371 (1976) (requiring "affirmative link" between alleged misconduct and adoption of plan or policy by supervisors showing their authorization or approval of such misconduct)). "[J]ust as with any individual defendant, the plaintiff must establish a deliberate, intentional act by the supervisor to violate constitutional rights." *Jenkins*, 81 F.3d at 994-95 (internal quotations omitted).

To establish liability of supervisors, plaintiff also must show that "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." *Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010).

When the defense of qualified immunity is raised, "the Plaintiff initially bears a heavy two-part burden." *Reynolds v. Powell*, 370 F.3d 1028, 1030 (10th Cir. 2004) (internal quotation marks and citations omitted). To overcome the defense, the plaintiff must demonstrate that: (1) the defendant's actions violated a constitutional right; and (2) the right allegedly violated was clearly established at the time of the conduct at issue. *Id.*; *Maestas v. Lujan*, 351 F.3d 1001, 1006-07 (10th Cir. 2003).

In *Saucier*, the Supreme Court established a two-point inquiry for qualified immunity in which, first, the court had to determine whether, "[t]aken in the light most

favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier*, 533 U.S. at 201. "[T]he next, sequential step is to ask whether the right was clearly established." *Id.* The Supreme Court has urged that a court evaluating qualified immunity must consider the "threat reasonably perceived by the responsible officials." *See Hudson v. McMillian,* 503 U.S. 1, 8 (1992).

The Supreme Court thereafter modified the *Saucier* holding, stating that "while the sequence set forth there is often appropriate, it should no longer be regarded as mandatory. The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009).

To be clearly established, the "contours" of the right must be "sufficiently clear" such that "every 'reasonable official would have understood that what he is doing violates that right.'" *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640, (1987)). And while there need not be "a case directly on point," the "existing precedent must have placed the statutory or constitutional question beyond debate." *Id.*

In *al-Kidd*, which involved a *Bivens* claim under the Fourth Amendment against former Attorney General Ashcroft, the Supreme Court held that the right was not clearly established. *Id.* This conclusion was necessary because "[a]t the time of al-Kidd's arrest, not a single judicial opinion had held that pretext could render an objectively reasonable arrest pursuant to a material-witness warrant unconstitutional." *Id.*

Similarly, in a more recent case, the Court held that a "First Amendment right to be free from a retaliatory arrest that is supported by probable cause" was not clearly established at the time of the plaintiff's arrest. *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012). Two principal reasons supported its decision. First, the Supreme Court observed that *it* had never so held. *Id.* Second, the Court found that the state of the law in the Tenth Circuit — where the case came from — was far from clear on this area of the law. *Id.* at 2094.

### C. Plaintiff Cannot Show that it is Clearly Established that Confinement at ADX Deprives Him of a Protected Liberty Interest.

In his timely claims against Davis and Daniels, Plaintiff contends that they housed him in different units at ADX in violation of the Fifth Amendment. Doc. 38-1.

The Court should first address the "clearly established" prong because of the particular claims Plaintiff has asserted. He must show that the following constitutional question is clearly established: did his prior confinement at different units in ADX deprive him of a liberty interest under the Fifth Amendment? The answer to this question is a definite "no." The constitutional question here is hardly established "beyond debate." *al-Kidd*, 131 S. Ct. at 2083. Because the Tenth Circuit has recently held that the conditions of confinement at ADX do not deprive inmates of a liberty interest, *Rezaq v. Nalley*, 677 F.3d 1001, 1012-17 (10th Cir. 2012), the constitutional issue here is obviously not clearly established. In fact, the very opposite proposition is the established law.

In sum, Defendants are entitled to qualified immunity on Plaintiff's procedural due process claims because the law is not clearly established.

**D. Defendants are Entitled to Qualified Immunity Because Plaintiff Has Failed to Allege Facts that Establish a Fifth Amendment Violation.**

In his timely claims against Davis and Daniels, Plaintiff contends that they housed him in different units at ADX in violation of the Fifth Amendment. Doc. 38-1 at 1-22. Even if he had shown that these constitutional questions were clearly established, he has failed to plead plausible claims.

A prisoner alleging a procedural due process claim must establish two elements: (1) "whether there exists a liberty or property interest of which [he] has been deprived"; and, if so, (2) "whether the procedures followed by the State were constitutionally sufficient." *Swarthout v. Cooke*, 131 S. Ct. 859, 861 (2011). A liberty interest exists only where an interference with that right would impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). "The Due Process Clause standing alone confers no liberty interest in freedom from state action taken 'within the sentence imposed.'" *Id.* at 480 (quoting *Hewitt v. Helms*, 459 U.S. 460, 468 (1983)).

Here, Plaintiff has failed to plead plausible Fifth Amendment claims related to his confinement in various ADX housing units.[2] In light of *Rezaq,* a prisoner's confinement at ADX does not implicate a liberty interest, and does not violate the Fifth Amendment. 677 F.3d at 1012-17. Moreover, he has failed to plead any allegation addressing the elements of such a claim despite have multiple opportunities to file amended complaints. Accordingly, Plaintiff's procedural due process claims are not plausible and should be dismissed.

---

[2] For similar reasons, defendants Wiley, Sproul, Collins, Haygood and Bradford are also entitled to qualified immunity.

**E. Defendants are Entitled to Qualified Immunity Because Plaintiff Has Failed to Allege Facts that Establish an Eighth Amendment Violation.**

Plaintiff asserts timely Eighth Amendment claims for denial of medical care against Davis and Daniels. Doc. 38-1 at 2-9. He also asserts a timely Eighth Amendment conditions-of-confinement claim against Daniels. *Id.* at 9.

Deliberate indifference to serious medical needs can be a violation of the Cruel and Unusual Punishment Clause of the Eighth Amendment "because it constitutes the unnecessary and wanton infliction of pain contrary to contemporary standards of decency." *Helling v. McKinney*, 509 U.S. 25, 32 (1993) (quotation omitted). To state a claim for violation of the Eighth Amendment based on inadequate medical care, a plaintiff must show that the defendants were deliberately indifferent to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

Regardless of the specific type of claim, to establish deliberate indifference, the Supreme Court "set forth a two-pronged inquiry, comprised of an objective and subjective component." *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). A plaintiff must prove both the objective and subjective components. *Sealock v. Colorado*, 218 F.3d 1209, 1211 (10th Cir. 2000).

### 1. Elements of the Objective Component.

The objective component requires that the harm suffered by the prisoner "rise[ ] to a level 'sufficiently serious' to be cognizable" under the Eighth Amendment. *Mata v. Saiz*, 427 F.3d 745, 752-53 (10th Cir. 2005) (quoting *Farmer*). As the Tenth Circuit recently explained, "it is the harm claimed by the prisoner that must be sufficiently serious … and not solely 'the symptoms at the time the prison employee has contact

with the prisoner.'" *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009) (quoting *Mata*, 427 F.3d at 753).

Further, a harm is "sufficiently serious" if it "has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Sealock*, 218 F.3d at 1209. However, when "the necessity for treatment would not be obvious to a lay person, the medical judgment of the physician, even if grossly negligent, is not subject to second-guessing," and a lay challenge to such medical judgment will not satisfy the objective component. *Mata,* 427 F.3d at 751.

When the claim involves an allegation of denial in medical care, the plaintiff must "show the delay resulted in substantial harm." *Id.* at 755; *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001). He may show substantial harm by providing competent evidence that the delay "caused either unnecessary pain or a worsening of [the] condition." *Mata*, 427 F.3d at 755.

### 2. Elements of the Subjective Component.

With respect to the subjective component, the plaintiff must prove that defendant had a culpable state of mind. *Estelle*, 429 U.S. at 106. A plaintiff "must establish that defendant(s) knew he faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it." *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999) (citations and internal quotations omitted). Unlike the objective component, a prisoner's *symptoms* are relevant for the subjective component because the inquiry is whether the symptoms were "such that a prison employee knew the risk to

16

the prisoner and chose (recklessly) to disregard it[.]"  *Martinez*, 563 F.3d at 1089

(quoting *Mata*).

### 3.   Plaintiff Failed to Allege Plausible Eighth Amendment Claims.

Here, Plaintiff has failed to establish the objective or subjective components of

his claims against Davis and Daniels.[3]  With respect to the conditions of confinement

claims, the allegations are woefully deficient and fail to "provide adequate notice as to

the nature of the claims against each" individual defendant.  *Robbins v. Oklahoma*, 519

F.3d 1242, 1250 (10th Cir. 2008).   Indeed, the second amended complaint has no

description of Plaintiff's prior conditions of confinement at ADX, or any allegations that

these defendants failed to provide Plaintiff with "humane conditions of confinement,

including adequate food, clothing, shelter, sanitation, medical care, and reasonable

safety from serious bodily harm."   *Tafoya v. Salazar*, 516 F.3d 912, 916 (10th Cir.

2008).   Nor are there any allegations that Davis and Daniels acted with culpable intent

in housing Plaintiff at various ADX units.   Accordingly, these claims are not plausible

and these defendants are entitled to qualified immunity.

As to the objective component for the denial of care claims, these also fail on

several levels.   First, he has failed to allege sufficient facts to establish that the

conditions (pain, hemorrhoids and acne, Doc. 38-1 at 5, 10) were "sufficiently serious"

to trigger the protection afforded by the Eighth Amendment.  *Sealock*, 218 F.3d at 1209.

Indeed, there are no allegations that the conditions has been deemed by a physician as

requiring treatment, nor does it appear to be a condition for which a lay person would

---

[3] For similar reasons, defendants Wiley, Johnson, Sproul, and Collins are also entitled
to qualified immunity.

conclude that vague conditions like "pain," "hemorrhoids," or "acne" require medical treatment.

Second, even if these conditions were "sufficiently serious," Plaintiff has failed to allege any facts that show that the alleged denial in receipt of care resulted in substantial harm to him. Again, there are no allegations that the lack of treatment caused a worsening of the conditions, or unnecessary pain. *Mata*, 427 F.3d at 755. Plaintiff has simply failed to allege a plausible constitutional violation.

As to the subjective component, Plaintiff has failed to allege sufficient facts to establish that Defendants Davis and Daniels had a culpable state of mind. Simply put, there are no allegations that Davis and Daniels *knew* that Plaintiff faced "a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it." *Hunt*, 199 F.3d at 1224. The allegation that wardens Davis and Daniels had a supervisory responsibility to protect Plaintiff constitutes an improper attempt to impose *respondeat superior* liability on these individuals, who may not be liable solely because of their position. *Pembaur*, 475 U.S. at 479. Accordingly, Plaintiff also has failed to allege that these defendants acted with any culpable intent, and the defendants are entitled to qualified immunity.

In sum, because Plaintiff has not asserted plausible Eighth Amendment violations, the claims should be dismissed.

## V. CONCLUSION.

For the reasons set forth above, Defendants' motion to dismiss should be granted and Plaintiff's claims should be dismissed as frivolous and with prejudice.

Respectfully submitted,

JOHN F. WALSH
United States Attorney

s/Juan G. Villaseñor
JUAN G. VILLASEÑOR
Assistant United States Attorney
United States Attorney's Office
1225 Seventeenth Street, Suite 700
Denver, Colorado 80202
Telephone: (303) 454-0100
E-mail: juan.villasenor@usdoj.gov

## CERTIFICATE OF SERVICE (CM/ECF)

I hereby certify that June 14, 2012, I electronically filed the foregoing document (including attachments) with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

None.

and I hereby certify that I have mailed or served the document or paper to the following non CM/ECF participants in the manner (mail, hand- delivery, etc.) indicated above the nonparticipant's name:

**U.S. Mail**
Osman Nuri Ozsusamlar #53271-054
Atwater U.S. Penitentiary
Inmate Mail/Parcels
P.O. Box 019001
Atwater, CA 95301

s/ Juan G. Villaseñor
United States Attorney's Office