IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-00714-REB-MJW

OSMAN NURI OZSUSAMLAR,

Plaintiff,

v.

R. WILEY, Former Warden, USP-ADX Florence, CO,
BLAKE DAVIS, Warden, USP-ADX Florence, CO,
CHARLES DANIELS, Warden USP-High Florence, CO,
K. JOHNSON, Associated Warden USP-ADX Florence, CO,
MR. SPROUL, H J, K Unit Manger USP-ADX Florence, CO,
M. COLLINS, Administrative Remedy Coordinator, USP-ADX, and
WILMAR HAYGOOD, J, K Unit Counselor USP-ADX,
Defendants.

---

**RECOMMENDATION ON
DEFENDANTS' MOTION TO DISMISS (Docket No. 77)**

---

**MICHAEL J. WATANABE
United States Magistrate Judge**

This case is before this court pursuant to an Order Referring Case issued by

Judge Robert E. Blackburn on January 18, 2013 (Docket No. 42).

**BACKGROUND**

This case was commenced in and transferred from the United States District

Court for the Southern District of New York after plaintiff sent them two letters plus

attachments concerning conditions of his confinement at USP-Florence, Colorado.

(Docket No. 1-1 at 1-5). The first letter was dated May 8, 2011, and the second was

dated ten days later. The first named five individuals (Collins, Sproul, Haygood, Oliver,

and Bradford) in the body of the letter, asserting that "[c]riminal acts harrassment [sic]

2

and acts of conspiracy to torture me took place because [those] individuals . . . chose to disobay [sic] the direct orders of the U.S. Attorney Office - Southern District of New York . . . ." (Docket No. 101 at 102). Those purported "criminal acts" and "on going 3 year conspiracy" were due to "these BOP [Bureau of Prisons] employee's [sic] refused to removed SAM's and labeling [plaintiff] a "Terrorist in my BOP file.'" (Docket No. 1-1 at 2). Plaintiff complains of other matters in that same letter but did not attribute any of the actions to any named individuals. The second letter merely listed letters that were attached which concerned the removal of all Special Administrative Measures ("SAMs") as they related to the plaintiff and stated that as of the date of the letter, plaintiff was still classified as a "terrorist" and his SAMs had not been removed. (Docket No. 1-1 at 4).

A Transfer Order was issued by Chief Judge Loretta A. Preska of the Southern District of New York on July 20, 2011, because plaintiff was incarcerated in the District of Colorado, and he alleged that a substantial part of the events or omissions giving rise to his claims occurred in Florence, Colorado. (Docket No. 1).

On March 22, 2012, Magistrate Judge Boland issued an Order Directing Plaintiff to Cure Deficiencies within thirty days, including submitting a Complaint on the proper form. (Docket No. 3). Thereafter on May 29, 2012, plaintiff submitted amended pleadings (Docket Nos. 15 and 16) with three named defendants, Blake Davis, Charles Daniel, and Cameron Lindsay (Wardens of ADX Florence, USP-High Florence, and MDC Brooklyn, respectively) dated May 15, 2012. However, on September 4, 2012, Magistrate Judge Boland filed an Order Directing Plaintiff to File Amended Complaint (Docket No. 26), stating in pertinent part:

In the Complaint, Mr. Ozsusamlar asserts in his first claim that the

3

Defendants violated several federal criminal statutes when they placed a wiretap on a jailhouse informant and recorded a conversation between the informant and Plaintiff's father that was used as evidence in Plaintiff's criminal case. Plaintiff further alleges that in 2007, while he was detained at MDC-Brooklyn, he received a disciplinary conviction for defiance after he reported to a federal district judge that prison officials threatened him with retaliatory action if he did not become a government informant. Plaintiff states that he was placed in administrative segregation and was denied his property. Thereafter, Mr. Ozsusamlar was transferred to ADX-Florence, Colorado and housed in a terrorist unit. At some point, he was placed on Special Administrative Measures (SAMs) which continued during his incarceration at USP-Florence. Pursuant to the SAMs, Plaintiff was housed in a segregation unit and was not allowed to receive or send personal or legal mail. Mr. Ozsusamlar further alleges that prison officials at ADX-Florence and/or USP-Florence denied him medications and refused to treat his tuberculosis. Plaintiff seeks monetary and injunctive relief.

The Complaint is deficient because Mr. Ozsusamlar asserts in his first claim that the Defendants violated several federal criminal statutes. However, those statutes do not provide him with a private cause of action for damages. *See, e.g., Newcomb v. Ingle*, 827 F.2d 675, 676 n. 1 (10th Cir.1987) (recognizing that 18 U.S.C. § 241 is a criminal statute which does not provide for a private civil cause of action); *see also Winslow v. Romer,* 759 F. Supp. 670, 673 (D. Colo. 1991) ("Private citizens generally have no standing to institute federal criminal proceedings."). Accordingly, Plaintiff may not maintain a claim against the Defendants for violation of federal criminal statutes.

Next, this Court is not the proper venue to adjudicate Mr. Ozsusamlar's claims against Defendant Lindsay, the warden at MDC-Brooklyn, New York. Defendant Lindsay resides outside the State of Colorado and the alleged unconstitutional conduct involving this Defendant occurred outside of Colorado. . . . the claim is not properly before this Court and is subject to *sua sponte* dismissal. . . . The Court declines to transfer the claims in lieu of dismissal because Plaintiff's allegations that he received a disciplinary conviction for defiance, which resulted in his placement in administrative segregation and the concomitant loss of personal property, do not show that he was subjected to an atypical and significant hardship in relation to the ordinary incidents of prison life. . . . Furthermore, Plaintiff does not allege facts to show that the disciplinary conviction was obtained in violation of his procedural due process rights. . . . And finally, the claim appears to be time-barred. Accordingly, Plaintiff should not include any claims against Defendant Lindsay in the amended complaint that he will be directed to file.

4

Third, aside from the imposition of SAMs, Mr. Ozsusamlar's allegations generally fail to show that Defendants Davis and Daniel personally participated in the alleged deprivation of Plaintiff's constitutional rights. Personal participation is an essential element of a **_Bivens_** action. . . . Plaintiff therefore must show that each named Defendant caused the deprivation of a federal right. . . . Furthermore, a supervisor is only liable for a constitutional violation that he or she has caused. . . .Accordingly, there must be an affirmative link between the alleged constitutional violation and each Defendant's participation, control or direction, or failure to supervise. . . .  Supervisors cannot be held liable merely because of their supervisory positions. This is because "§ 1983 [and _Bivens_] do[ ] not recognize a concept of strict supervisor liability; the defendant's role must be more than one of abstract authority over individuals who actually committed a constitutional violation." . . .

Finally, the Complaint is deficient because it is largely incomprehensible. Mr. Ozsusamlar makes conclusory assertions throughout the Complaint that the Defendants have used his name through corruption to obtain money from the United States government, but does not explain these allegations coherently. Further, the Complaint is replete with allegations that do not appear to relate to specific constitutional claims. In short, the Complaint fails to comply with the pleading requirements of Rule 8 of the Federal Rules of Civil Procedure. The twin purposes of a complaint are to give the opposing parties fair notice of the basis for the claims against them so that they may respond and to allow the court to conclude that the allegations, if proven, show that the plaintiff is entitled to relief. . . . The requirements of Fed. R. Civ. P. 8 are designed to meet these purposes. . . .

Specifically, Rule 8(a) requires that a complaint "contain (1) a short and plain statement of the grounds for the court's jurisdiction, . . . (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for the relief sought . . . ." In order for Plaintiff to state a claim in federal court, his "complaint must explain what each defendant did to him or her; when the defendant did it; how the defendant's action harmed him or her; and, what specific legal right the plaintiff believes the defendant violated." . . .

Mr. Ozsusamlar fails to set forth a short and plain statement of his claims showing that he is entitled to relief. His allegations are difficult to discern and do not provide enough information to inform the Court or the Defendants about the factual basis of the claims. For the purposes of Rule 8(a), "[i]t is sufficient, and indeed all that is permissible, if the complaint concisely states facts upon which relief can be granted upon any legally sustainable basis." . . .  Accordingly, Plaintiff will be directed to file an amended complaint that complies with the pleading requirements of Rule 8. Plaintiff is reminded that it is his responsibility to present his claims in a manageable format that allows the Court and the defendants to know what claims are being asserted and to be able to respond to

those claims.

(Docket No. 26) (citations and footnote omitted).  Plaintiff was thus directed to file an

amended complaint within thirty days that complied with Rule 8 of the Federal Rules of

Civil Procedure and otherwise complied with the directives of that order.  He was also

ordered to obtain the court-approved Prisoner Complaint form along with the applicable

instructions and was warned that if he failed to file an amended complaint as directed

within the time allowed, the complaint and the action would be dismissed without

prejudice without further notice.  (Docket No. 26).

After being granted an extension of time (see Docket No. 29), on November 8,

2012, plaintiff once again filed two Amended Complaints (Docket Nos. 33 and 34) along

with a cover letter explaining the reason for filing two pleadings (Docket No. 32).

Consequently, on November 26, 2012, Judge Boland issued an Order Directing Plaintiff

to File **Second and Final Amended Complaint** (Docket No. 35), stating in pertinent

part:

> . . . The Court has reviewed the amended complaints and has determined that
> they are deficient. Mr. Ozsusamlar therefore will be directed to file a second and
> final amended complaint for the reasons discussed below.
>
> The amended complaints contain some similar allegations and exhibits but
> are not identical. To comply with Fed. R. Civ. P. 8, a complaint must "contain (1)
> a short and plain statement of the grounds for the court's jurisdiction, . . . (2) a
> short and plain statement of the claim showing that the pleader is entitled to
> relief, and (3) a demand for the relief sought . . . ." In order for Plaintiff to state a
> claim in federal court, his "complaint must explain what each defendant did to
> him or her; when the defendant did it; how the defendant's action harmed him or
> her; and, what specific legal right the plaintiff believes the defendant violated." . .
> .
>
> Mr. Ozsusamlar has presented his claims and supporting factual
> allegations in two separate pleadings. Although some facts are alleged in both
> pleadings, the pleadings differ in other respects. Furthermore, Plaintiff asserts

6

seven claims for relief in one amended complaint and three claims for relief in the other, some of which overlap. The Court is not required to read multiple amended complaints to determine whether Plaintiff has somewhere stated an arguable claim for relief against each Defendant. The general rule that **pro se** pleadings must be construed liberally has limits and "the court cannot take on the responsibility of serving as the litigant's attorney in constructing arguments and searching the record." . . .   It is Plaintiff's responsibility to present his claims in a manageable format that allows the Court and the Defendants to know what claims are being asserted and to be able to respond to those claims. **Accordingly, Mr. Ozsusamlar must set forth his well-pleaded allegations in a single pleading, titled "Second and Final Amended Complaint," in conformance with the directives in the September 4 order and as set forth here.**

In addition, the amended complaints are deficient because Mr. Ozsusamlar continues to assert that Defendants violated federal criminal statutes. Criminal statutes do not provide him with a private cause of action for damages. . . .

Moreover, Mr. Ozsusamlar was advised in the September 4 Order that this Court is not the proper venue to adjudicate his claim against Defendant Lindsay, the warden at MDC-Brooklyn, New York. Defendant Lindsay resides outside the State of Colorado and the alleged unconstitutional conduct involving this Defendant occurred outside of Colorado. *See* 28 U.S.C. § 1391. Therefore, the claim against Defendant Lindsay is not properly before this Court and is subject to *sua sponte* dismissal. . . .   Alternatively, the Court may exercise its discretion to cure jurisdictional and venue defects by transferring the claim to a district where venue is proper, if such a transfer is in the interest of justice. . . . However, the Court advised Mr. Ozsusamlar in the September 4 Order that transfer was not appropriate in this action because the claim against Defendant Lindsay is time-barred.

Third, Mr. Ozsusamlar must allege specific facts in the second amended complaint to show that each named Defendant personally participated in a deprivation of his constitutional rights. Personal participation is an essential element of a ***Bivens*** action. . . .   Plaintiff therefore must show that each named Defendant caused the deprivation of a federal right. . . .   Furthermore, a supervisor is only liable for a constitutional violation that he or she has caused. . . . Accordingly, there must be an affirmative link between the alleged constitutional violation and each Defendant's participation, control or direction, or failure to supervise. . . .   Supervisors cannot be held liable merely because of their supervisory positions. . . .   Again, Mr. Ozsusamlar must allege the facts showing each Defendant's personal participation in the same pleading in which he alleges the specific facts supporting his claims for relief.

(Docket No. 35) (citations omitted).  Accordingly, plaintiff was directed to file a single pleading within thirty days titled "Second and Final Amended Complaint" that complied with Rule 8 of the Federal Rules of Civil Procedure and otherwise conformed with the directives of this order and with the September 4, 2012, Order.  Furthermore, Magistrate Judge Boland ordered that if Plaintiff failed to file a Second Amended Complaint as directed within the time allowed, some or all of Plaintiff claims would be dismissed without further notice.  (Docket No. 35).

On January 2, 2013, plaintiff filed a Second Amended Complaint (Docket No. 38), dated December 20, 2012 (Docket No. 38-1 at 27), in which he named eight defendants.  This is the operative pleading.  Subsequently, his claim as against one of the defendants, R. Bradford, was dismissed without prejudice based upon the plaintiff's failure to serve him.  (Docket No. 89).  Therefore, the remaining defendants are R. Wiley, Former Warden, USP-ADX Florence; Blake Davis, Warden, USP-ADX Florence; Charles Daniels, Warden, USP-High Florence; K. Johnson, "Associated Warden," USP-ADX Florence; Mr. Sproul, Unit Manager, USP-ADX, Florence; M. Collins, Administrative Remedy Coordinator, USP-ADX; and Wilmar Haygood, Unit Counselor, USP-ADX.  Plaintiff's claims are very difficult to summarize because once again his pleading is difficult to read, incomprehensible in some places, and largely conclusory. Yet again he makes conclusory allegations throughout the pleading that defendants have used his name through corruption to obtain money from the United States government, and he again does not explain these allegations coherently, nor does he state a constitutional violation with respect to such allegations.  The court will not attempt to summarize the majority of plaintiff's claims because, as found below, most

are time-barred.

## DEFENDANTS' MOTION TO DISMISS

Now before the court for a report and recommendation is the Defendants' Motion to Dismiss (Docket No. 77). Plaintiff has not filed a response. The court has carefully considered the motion as well as applicable Federal Rules of Civil Procedure and case law. In addition, the court has taken judicial notice of the court file. The court now being fully informed makes the following findings, conclusions of law, and recommendation.

Defendants seek dismissal of the Second Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and (b)(6) as frivolous pursuant to 28 U.S.C. § 1915(g). They raise the following bases for dismissal: (1) the declaratory and injunctive relief requests are moot, (2) the majority of the plaintiff's Bivens claims are time-barred, and (3) defendants are entitled to qualified immunity.

Rule 12(b)(1):

empowers a court to dismiss a Complaint for "lack of jurisdiction over the subject matter." Fed. R. Civ. P. 12(b)(1). As courts of limited jurisdiction, federal courts may only adjudicate cases that the Constitution and Congress have granted them authority to hear. See U.S. CONST. art. III, § 2; *Morris v. City of Hobart*, 39 F.3d 1105, 1110 (10th Cir. 1994). Statutes conferring jurisdiction on federal courts are to be strictly construed. *See F & S Constr. Co. v. Jensen*, 337 F.2d 160, 161 (10th Cir. 1964). A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclusory allegations of jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *See Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).

Motions to dismiss pursuant to Rule 12(b)(1) may take two forms. First, if a party attacks the facial sufficiency of the complaint, the court must accept the allegations of the complaint as true. *See Holt v. United*

9

*States*, 46 F.3d 1000, 1002-03 (10th Cir. 1995).  Second, if a party attacks the factual assertions regarding subject matter jurisdiction through affidavits and other documents, the court may make its own findings of fact.  *See id.* at 1003.  A court's consideration of evidence outside the pleadings will not convert the the motion to dismiss to a motion for summary judgment under Rule 56.  *See id.*

Cherry Creek Card & Party Shop, Inc. v. Hallmark Marketing Corp., 176 F. Supp.2d

1091, 1094-95 (D. Colo. 2001).

Under Rule 8(a)(2), a pleading must contain "a short and plain statement of the

claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A motion to

dismiss pursuant to Rule 12(b)(6) alleges that the complaint fails "to state a claim upon

which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "A complaint must be dismissed

pursuant to Fed. R. Civ. P. 12(b)(6) if it does not plead 'enough facts to state a claim to

relief that is plausible on its face.'"  Cutter v. RailAmerica, Inc., 2008 WL 163016, at *2

(D. Colo. Jan. 15, 2008) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127

S. Ct. 1955, 1974 (2007)).  "While a complaint attacked by a Rule 12(b)(6) motion to

dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide

the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and

a formulaic recitation of the elements of a cause of action will not do . . . ."  Bell Atlantic

Corp., 550 U.S. at 555 (citations omitted).  "Factual allegations must be enough to raise

a right to relief above the speculative level."  Id.  "[A] plaintiff must 'nudge [] [his] claims

across the line from conceivable to plausible' in order to survive a motion to dismiss. . . .

Thus, the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts

in support of the pleaded claims is insufficient; the complaint must give the court reason

to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for

10

*these* claims." Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting Bell Atlantic Corp., 127 S. Ct. at 1974).

The Tenth Circuit Court of Appeals has held "that plausibility refers 'to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" Khalik v. United Air Lines, 671 F.3d 1188, 1191 (10th Cir. 2012). The Circuit court has further "noted that '[t]he nature and specificity of the allegations required to state a plausible claim will vary based on context.'" Id. The court thus "concluded the *Twombly/Iqbal* standard is 'a wide middle ground between heightened fact pleading, which is expressly rejected, and allowing complaints that are no more than labels and conclusions or a formulaic recitation of the elements of a cause of action, which the Court stated will not do.'" Id.

For purposes of a motion to dismiss pursuant to Rule 12(b)(6), the court must accept all well-pled factual allegations in the complaint as true and resolve all reasonable inferences in the plaintiff's favor. Morse v. Regents of the Univ. of Colo., 154 F.3d 1124, 1126-27 (10th Cir. 1998); Seamons v. Snow, 84 F.3d 1226, 1231-32 (10th Cir. 1996). However, "when legal conclusions are involved in the complaint 'the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to [those] conclusions' . . . ." Khalik, 671 F.3d at 1190 (quoting Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009)). "Accordingly, in examining a complaint under Rule 12(b)(6), [the court] will disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." Id. at 1191.

11

Since the plaintiff is not an attorney, his pleading and other papers have been construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers.  See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing Haines v. Kerner, 404 U.S. 519, 520-21 (1972)).  Therefore, "if the court can reasonably read the pleadings to state a claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements. . . . At the same time, . . . it is [not] the proper function of the district court to assume the role of advocate for the pro se litigant."  Id.

**Mootness.**  In the Second Amended Complaint, in addition to monetary damages, plaintiff seeks injunctive and declaratory relief.  (Docket No. 38-1 at 28-30). He states in his Request for Relief that he is seeking, in pertinent part:

> . . .
>
> 3.)  A preventive injunction stopping Defendants and their agents from tangibly or intangibly retaliating against Plaintiff for filing this action;
>
> . . .
>
> 7.) Issue an order in favor of Plaintiff finding that the Defendant's [sic] actions constitute a complete disregard for Plaintiff's Rights, and violated Plaintiff's First , Fifth, Sixth, Eighth, Fourteen Amendment Rights to the U.S. Constitution, and 18 U.S.C. §1519, and also BOP own Program Statement 3420.09, Standards of Employee Conduct.
>
> 8.) A declaration that the acts and omissions described herein violated Plaintiff's Rights under the Constitution and Laws of the United States.
>
> 9.) A preliminary and permanent injunction ordering defendants WILEY, DAVIS, DANIELS, JOHNSON, SPROUL, COLLINS, HAYGOOD . . . to fixed [sic] (rectify) in my BOP file including sanction impose all of other illegal restriction, and sending to me Low Security Prison.

10.) Issue an order finding that the actions taken by the Defendants, Plaintiff suffered irreparable injury during his "First Appeal" and "Post- Conviction Proceeding." Up to today prison condition and treatment in prison violation continue because using excused for illegal disciplinary incident report no #1601577 ("shot" 203 code: threatening Bodily Harm District Judge Peter Leisure.  Even this is Disciplinary report violation of under 28 C.F.R. §7.12, Retaliation for Exercising Constitutional Rights.) Any my currently BOP file however show to me treatening [sic] like same BOP staff.  Legally long time ago should be move to LOW SECURITY PRISON never happen yet until today. Allow U.S. Law and BOP Program Statement prison Rules and Regulation send me LOW SECURITY PRISON.

. . .

17.) I am requesting my BOP file "MALE CUSTODY CLASSIFICTION FORM" section (A) Identifying Data Public Safety Factor GREATER SEVERITY, MGTV ; GRTR SECURITY, and MANAGEMENT VARIABLE ENDING DATE : 05- -9- 2013, should be fixed all showing there illegal and unlawfully knowingly put in my BOP file with section (B) Base Scoring severity : (7) GREATEST and Violence : (3) 5-10 years minor.  Those information illegal and Office of the Inspector General other BOP Internal Office - appiraciated [sic] staff fixed. . . .

(Docket No. 38-1 at 28-30).  Plaintiff, however, is now housed in FCI-McDowell, a

medium security facility, in Welch, West Virginia, where none of the named defendants

are employed by the BOP.  As defendants assert, plaintiff's declaratory and injunctive

relief requests are constitutionally moot because if any relief were granted, it would not

affect defendants' behavior.  "Federal courts only have jurisdiction to consider live,

concrete cases or controversies."  Rezaq v. Nalley, 677 F.3d 1001, 1008 (10th Cir.

2012).  "A case becomes moot when factual developments render a claim no longer live

and ongoing, such that a decision on the merits will not affect the behavior of the

defendant toward the plaintiff."  Id. (quotations and omissions omitted).  Here,

defendants are not situated to effectuate any prospective relief that this court might

afford plaintiff.  See Jordan v. Sosa, 654 F.3d 1012, 1028 (10th Cir. 2011).  "[A]n entry of

equitable relief in his favor would amount to nothing more than a declaration that he was

wronged, and would have no effect on the defendants' behavior towards him." Id. (quotations omitted). Therefore, it is recommended that the plaintiff's claims for injunctive and declaratory relief be dismissed. See id. ("Where the prisoner's claims for declaratory or injunctive relief relate solely to the conditions of confinement at the penal institution at which the prisoner is no longer incarcerated, courts have concluded that they are unable to provide the prisoner with effective relief); Abdulhaseeb v. Calbone, 600 F.3d 1301, 1311 (10th Cir. 2010) (because inmate had been transferred away from certain facilities, declaratory and injunctive relief would not be available against defendants from those facilities); Hamlin v. Smith, 2010 WL 2740119, at *11 (D. Colo. July 12, 2010) (plaintiff's claim for injunctive relief moot based upon his transfer from the facility where the defendants were located).

   **Statute of Limitations.** Defendants next assert that the majority of the plaintiff's Bivens claims are time-barred. This court agrees. Plaintiff's Bivens claims are governed by the two-year statute of limitations contained in § 13-80-102, C.R.S. See Garrett v. Fleming, 362 F.3d 692, 695 n.4 (10th Cir. 2004); Hicks v. Podolak, 2013 WL 5443515, at *4 (D. Colo. Sept. 30, 2013). Federal law, rather than state law, determines when a federal claim accrues. The statute of limitations begins to run when the plaintiff knows or has reason to know of the existence and cause of injury which is the basis of his action. See Kripp v. Luton, 466 F.3d 1171, 1175 (10th Cir. 2006); Van Tu v. Koster, 364 F.3d 1196, 1199 (10th Cir. 2004); Industrial Constructors Corp. v. United States Bur. of Reclamation, 15 F.3d 963, 969 (10th Cir. 1994). Dismissal under Fed. R. Civ. P. 12(b)(6) is proper when the Complaint indicates on its face that the statute of limitations has expired. See Aldrich v. McCulloch Props. Inc., 627 F.2d 1036, 1041 n.4 (10th Cir.

1980).

Here, defendants assert that the only timely claims are the plaintiff's Fifth and

Eighth Amendment claims against defendants Davis and Daniels.  The court has very

carefully reviewed the two letters originally filed in the Southern District of New York

(Docket No. 1-1) and the various amended pleadings (Docket Nos. 15, 16, 33, 34, and

38), including the Second Amended Complaint (Docket No. 38), all of which are difficult

to read and in some places are incomprehensible.  The court agrees with the

defendants' statute of limitations arguments and finds that the following claims against

specific defendants are untimely because they accrued in August 2005, November

2007, May 2008, September 2008, and/or September 2009: defendant Wiley (Fifth and

Eighth Amendments - 11/07, 5/08, and 9/08), Davis (First, Fifth, and Eighth

Amendments - 5/08, 9/09); Daniels (First Amendment  - 5/08), Johnson (First, Fifth, and

Eighth Amendments - 8/05, 11/07), Sproul (Fifth and Eighth Amendment - 11/07, 3/08),

Collins (First and Eighth Amendments - 9/08), and Haygood (Fifth Amendment - 9/09-

10/10).

The court notes that while plaintiff mentioned defendant Haygood's name (and

others) in the May 8, 2011, letter sent to the Southern District of New York, he did so

only with respect to alleged non-specific "[c]riminal acts harrassment [sic] and acts of

conspiracy to torture me . . . chose to disobey the direct orders of the U.S. Attorney

Office . . . ."  (Docket No. 1-1 at 1).  Plaintiff raised other complaints in that first letter,

but he did not attribute any of the acts alleged to any specific individuals.  In the Second

Amended Complaint, plaintiff for the first time raised other claims specifically against

Haygood concerning acts that purportedly occurred from September 15, 2009, through

15

October 15, 2010.  The Second Amended Complaint, however, was dated December 20, 2012.  Therefore, the new claims raised against Haygood in that pleading are time-barred.

The court further notes that throughout the Second Amended Complaint plaintiff again complains about money laundering that allegedly occurred from November 2007 through the end of November 2011, as well as purported obstruction of justice from August 2005 to the current date and other acts which plaintiff asserts are federal crimes. (See, e.g., Docket No. 38-1 at 3, 7, 10-11, 14, 22).  Not only are most of these claims time-barred, but none of these allegations rise to the level of a constitutional violation, and thus such claims should be dismissed.  As plaintiff was repeatedly advised by Magistrate Judge Boland, criminal statutes do not provide plaintiff with a private cause of action for damages.

**Qualified Immunity**.  Defendants next assert that they are entitled to qualified immunity.  "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223, 231 (2009).  It "balances two important interests - the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Id.  "Qualified immunity shields an officer from suit when [he] makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances [he] confronted." Brosseau v. Haugen, 543 U.S. 194, 198 (2004).  "Because the focus is on whether the officer had fair notice that [his] conduct

was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct.  If the law at that time did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability or, indeed, even the burdens of litigation."  Id.

When a defendant raises a qualified immunity defense, the plaintiff "bears the burden of showing that: (1) the defendants' actions violated a constitutional or statutory right; and (2) the right was clearly established and reasonable persons in the defendants' position would have known their conduct violated that right."  Cruz v. City of Laramie, Wyo., 239 F.3d 1183, 1187 (10th Cir. 2001).  The Supreme Court has held that the federal courts have discretion to determine "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  Pearson v. Callahan, 555 U.S. at 236.

"Requiring the law to be clearly established provides defendants with 'fair warning' that their conduct is unconstitutional."  Mimics, Inc. v. Village of Angel Fire, 394 F.3d 836, 841 (10th Cir. 2005).  "The law is clearly established when a Supreme Court or Tenth Circuit decision is on point, or if the clearly established weight of authority from other courts shows that the right must be as plaintiff maintains."  Id. (quotations omitted).  To be clearly established:

> [t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.  This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

Anderson v. Creighton, 483 U.S. 635, 640 (1987) (citation omitted)

Here, the only claims remaining that are not time-barred and which do not allege

17

mere violations of criminal law are the plaintiff's Fifth and Eighth Amendment claims

against defendants Davis and Daniels.

Due Process Claims.  First, with respect to his Fifth Amendment claims, plaintiff

asserts the following.  Regarding defendant Davis, plaintiff merely asserts"[o]n or about

September 2009, thru November 29, 2011, Defendant Warden DAVIS illegally placed

me in the ADX super maximum security prison while inmate Plaintiff LOW SECURITY

INMATE at that time.  Defendant DAVIS actions violated Plaintiff OZSUSAMLAR 5th

Amendment Rights to U.S. Constitution under DUE PROCESS CLAUSE as well as

state and federal status and rules including Access to the Court, Appeal. . . ."  (Docket

No. 38-1 at 5).  Similarly, regarding defendant Daniels, plaintiff merely asserts that "[o]n

or about October 15, 2010, Defendant Warden Charles DANIELS illegally placed me in

the ADX /USP - HIGH D-B unit super maximum security (pre transferred unit) prison

while inmate Plaintiff LOW SECURITY INMATE at that time.  Defendant DANIELS

actions violated Plaintiff OZSUSAMLAR 5th Amendment Rights to U.S. constitution

under DUE PROCESS CLAUSE as well as state and federal status and rules including

Access to the Court, Appeal. . . ."  (Docket No. 38-1 at 9).

Defendants contend that the plaintiff cannot show that it was clearly established

that his prior confinement at different units in ADX deprived him of a liberty interest

under the Fifth Amendment.  They assert that "[b]ecause the Tenth Circuit has recently

held that the conditions of confinement at ADX do not deprive inmates of a liberty

interest, *Rezaq v. Nalley*, 677 F.3d 1001, 1012-17 (10th Cir. 2012), the constitutional

issue here is obviously not clearly established.  In fact, the very opposite proposition is

the established law.  In sum, Defendants are entitled to qualified immunity on Plaintiff's

18

procedural due process claims because the law is not clearly established." (Docket No. 77 at 13).

The Fifth Amendment provides that no person shall "be deprived of life, liberty, or property, without due process of law." U.S. Const. amend V. Not every deprivation of liberty at the hands of prison officials, however, has constitutional dimension because prisoners retain only a "narrow range of protected liberty interests." Rezaq, 677 F.3d at 1011 (quoting Abbott v. McCotter, 13 F.3d 1439, 1442 (10th Cir 1994)). "For example, the Supreme Court has recognized that the Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement." Id. (quotation omitted). "A protected liberty interest only arises from a transfer to harsher conditions of confinement when an inmate faces an atypical and significant hardship . . . in relation to the ordinary incidents of prison life." Id. (quotations omitted).

In determining whether plaintiff had a protectable liberty interest, the court must determine whether plaintiff's assignment to ADX imposed "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." In this endeavor, the court is guided by the reasoning in Rezaq in which the Tenth Circuit identified four potentially relevant, but nondispositive, factors. The factors include whether (1) the placement relates to and furthers a legitimate penological interest, such as safety or rehabilitation; (2) the conditions of placement are extreme; (3) the placement increases the duration of confinement; and (4) the placement is indeterminate. Estate of DiMarco v. Wyoming Dep't of Corrections, 473 F.3d 1334, 1342 (10th Cir. 2007). While these factors are useful to guide the liberty interest analysis, they do not serve as a constitutional touchstone. Rezaq, 677 F.3d at 1012.

19

"[T]he proper approach is a fact-driven assessment that accounts for the totality of conditions presented by a given inmate's sentence and confinement."  Id.  With these considerations in mind, the court turns to the question of whether plaintiff had a protected liberty interest in avoiding confinement in ADX.

First, the court considers the BOP's penological interest in confining plaintiff in ADX; it is sufficient for the BOP to show that there is a reasonable relationship between confinement in ADX and its asserted penological interests.  See id. at 1014.  Here, it appears from the documents plaintiff himself submitted with the operative pleading that the penological interest in confining plaintiff to ADX was safety and security concerns.  While plaintiff seems to contend that his Fifth Amendment rights were violated because he was a "low security" inmate in a "super max" facility, the documents he attached to his pleading state he was classified as a "Low Security inmate with Maximum Custody" and also had a "Management Variable of Greater Security due to safety and security concerns."  (Docket No. 38-2 at 34, 35).  According to these documents, plaintiff arrived at ADX as an "Initial Designation" after he was sentenced to 188 months for conspiracy to commit murder for hire, murder for hire, and conspiracy to commit extortion which involved a conspiracy with his father who was in federal custody awaiting sentencing.  The documents further note that "[w]hile housed at MDC New York, [plaintiff] attempted to organize and arrange the killing of five Federal Bureau of Investigation Agents, two Prosecutors, two Defense Attorney's [sic] a Case Reporter, and a Forensic specialist."  (Docket No. 38-2 at 34, 35, 37).  Plaintiff claims throughout his pleading that these allegations are false.  It appears that essentially plaintiff is asking this court to substitute its judgment for that of prison officials on the question of his placement.  The court

20

should decline to do so.  It is well settled that "federal courts ought to afford appropriate

deference and flexibility to state officials trying to manage a volatile environment."

Sandin v. Conner, 515 U.S. 472, 482 (1995); see DiMarco, 473 F.3d at 1342 (the court

must be "mindful of the primary management role of prison officials who should be free

from second-guessing or micro-management from the federal courts").  In light of

plaintiff's criminal history of murder for hire that involved a conspiracy with his father

who was in federal custody, notwithstanding the allegations concerning plaintiff's

attempt to organize and arrange numerous other killings, the court finds that there was

a reasonable relationship between confining him in ADX and the BOP's penological

interests of institutional security and safety.  Thus, this factor does not weigh in favor of

finding a protected liberty interest.

       With regard to the second factor, in Rezaq, the Tenth Circuit discussed the

conditions of confinement that exist in ADX, and while recognizing that "[t]he conditions

at ADX are undeniably harsh," found that "[t]he conditions at ADX . . . do not, in and of

themselves, give rise to a liberty interest because they are substantially similar to

conditions experienced in any solitary confinement setting" and concluded "that the

conditions in the general population unit at ADX are not extreme as a matter of law."

Rezaq, 677 F.3d at 1014, 1015.  Plaintiff has not made any specific complaints about

the conditions at ADX.  Instead, he makes general comments, such as it being "a cruel

lock-up situation" (Docket No. 38 at 27) and "extreme housing unit conditions."  (Docket

No. 38 at 33).  There is no indication that the conditions plaintiff experienced in ADX

were materially different than those discussed in Rezaq.  The court thus finds that the

conditions of plaintiff's ADX confinement do not weigh in favor of finding a protected

21

liberty interest.

The court next considers whether the placement increased the duration of plaintiff's confinement.  Plaintiff has not made any allegation that the BOP's decision to confine him at ADX extended his length of his sentence or affected his release eligibility, if applicable.  Therefore, this factor does not weigh in favor of finding a protected liberty interest.

Finally, the court considers whether the placement was indeterminate.  The duration and indeterminacy of a placement in extreme conditions are often critical considerations in the liberty interest analysis.  Id. at 1016 (citing Wilkinson, 545 U.S. at 224).  However, while duration of confinement is an important consideration, it must be considered in tandem with indeterminacy.  Id.  Here, the record shows that plaintiff's management variable was reviewed during the course of his placement at ADX and that he was considered for re- designation to a lesser security facility after completing the final phase of the Pre-Transfer Program at USP Florence (see Docket No. 38-2 at 38).  Moreover, during the pendency of this action, plaintiff was transferred out of ADX.  Therefore, this factor does not weigh in favor of finding a protected liberty interest.

Taken together, the above four factors do not weigh in favor of finding that plaintiff's confinement at ADX deprived him of a protected liberty interest, and the court finds that the plaintiff has not met his burden of showing that the defendants' actions violated a constitutional right.  It is thus unnecessary for the court to address whether he was afforded adequate procedural protections.

Eighth Amendment Claim.  Defendants next assert that they are entitled to qualified immunity on plaintiff's Eighth Amendment claims because he has failed to

22

allege facts that establish an Eighth Amendment violation against defendants Davis and

Daniels.

"[P]risoners have an Eighth Amendment right to adequate medical care . . . ."

Oxendine v. Kaplan, 241 F.3d 1272, 1276 (10th Cir. 2001).  "In keeping with the principle

that government officials are generally afforded wide latitude when fulfilling their

discretionary functions, . . . however, in cases where prisoners allege that inadequate or

delayed medical care violated their Eighth Amendment rights, it has been established

that '[p]rison officials violate the Eighth Amendment [only] when they are deliberately

indifferent to the serious medical needs of prisoners in their custody.'"  Id.  "[T]he

Constitution is only implicated in situations in which prison officials act purposefully to

impose unnecessary pain on an inmate; 'inadvertent' denials of care or negligent

diagnosis or treatment does not rise to the level of an 8th Amendment violation."  Ajaj v.

Federal Bureau of Prisons, 2011 WL 902440, at *16 (D. Colo. Mar. 10, 2011).  To plead

an Eighth Amendment claim of deliberate indifference to medical needs, "an inmate

must allege: (i) that he suffered from a serious medical need–that is, one that has been

diagnosed by a medical provider as requiring treatment or one which even a lay person

would easily recognize as requiring medical attention; and (ii) the Defendant was

subjectively aware of that need and that failing to treat it would pose an excessive risk

to the inmate's health or safety, but nevertheless elected to delay or deny treatment for

it."  Id.  "The subjective component requires an examination into the defendant's actual

state of mind.  To satisfy this element, the inmate must plead facts that show that the

defendant both 'actually knew of' and 'deliberately disregarded' the fact that the inmate

was suffering from a serous medical need."  Id.

23

In addition, "[t]he Eighth Amendment's prohibition of cruel and unusual punishment imposes a duty on prison officials to provide humane conditions of confinement, including adequate food, clothing, shelter, sanitation, medical care, and reasonable safety from bodily harm." Tafoya v. Salazar, 516 F.3d 912, 916 (10th Cir. 2008). "[E]xtreme deprivations are required to make out a conditions-of-confinement claim." Hudson v. McMillian, 503 U.S. 1, 9 (1992). The Eighth Amendment is not violated unless the conditions deprive a prisoner of ''the minimal civilized measure of life's necessities.'" Wilson v. Seiter, 501 U.S. 294, 298 (1991) (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)). Also, plaintiff cannot assert a cognizable claim under the Eighth Amendment unless he alleges that prison officials were deliberately indifferent to a substantial risk of serious harm. See Farmer v. Brennan, 511 U.S. 825, 834 (1994).

Furthermore, "[i]ndividual liability under § 1983 must be based on personal involvement in the alleged constitutional violation." Foote v. Spiegel, 118 F.3d 1416, 1423 (10th Cir. 1997). "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009). As the Tenth Circuit has stated:

> Under § 1983, government officials are not vicariously liable for the misconduct of their subordinates. "[T]here is no concept of strict supervisor liability under § 1983." . . . "This does not mean that a supervisor may not be liable for injuries caused by the conduct of one of his subordinates. It does mean that his liability is not vicarious, that is, without fault on his part." . . . .

> Supervisors are only liable under § 1983 for their own culpable involvement in the violation of a person's constitutional rights. To

24

establish supervisor liability under § 1983, "it is not enough for a plaintiff merely to show a defendant was in charge of other state actors who actually committed the violation.  Instead, . . . the plaintiff must establish 'a deliberate, intentional act by the supervisor to violate constitutional rights.'" . . .  In short, the supervisor must be personally "involved in the constitutional violation," and a "sufficient causal connection" must exist between the supervisor and the constitutional violation." . . . .

In order to establish a § 1983 claim against a supervisor for the unconstitutional acts of his subordinates, a plaintiff must first show the supervisor's subordinates violated the constitution.  Then, a plaintiff must show an "affirmative link" between the supervisor and the violation, namely the active participation or acquiescence of the supervisor in the constitutional violation by the subordinates. . . .  In this context, the supervisor's state of mind is a critical bridge between the conduct of a subordinate and his own behavior.  Because "mere negligence" is not enough to hold a supervisor liable under § 1983, a plaintiff must establish that the supervisor acted knowingly or with "deliberate indifference" that a constitutional violation would occur. . . .

Serna v. Colorado Dept. of Corrections, 455 F.3d 1146, 1151-52 (10th Cir. 2006)

(citations omitted).

In this case, plaintiff has failed to allege adequately the requisite personal

participation by either defendant Davis or Daniels.  It appears from the Second

Amended Complaint that plaintiff is suing them only because of their supervisory roles

as warden or former warden within the BOP.   Regarding defendant Davis, plaintiff

merely asserts that

[o]n or about September, 2009, start up to November 29, 2011, Defendant DAVIS not provide to the other medical problem pain, stomach, hemorroidd, acne problem Plaintiff OZSUSAMLAR was not provided with medical while at the ADX super maximum prison at that time currently worked the ADX Warden Defendant DAVIS and Plaintiff life and property **Defendant DAVIS responsibility in protect**.  Defendant DAVIS actions violated Plaintiff OZSUSAMLAR 8th Amendment Rights to U.S. Constitution under DELIBERATE INDIFFERENCE – CRUEL AND UNUSUAL PUNISHMENT as well as state and federal status and rules. . . .

25

(Docket No. 38-1 at 5-6) (emphasis added).  Regarding defendant Daniels, plaintiff

merely asserts:

> . . .  On or about October 30, 2010, Defendant DANIELS intentionally used
> false information to place me in the ADX super maximum security prison /
> USP- HIGH D-B unit.. Defendant DANIELS actions violated Plaintiff
> OZSUSAMLAR 8th Amendment Rights to U.S. Constitution under
> DELIBERATE INDIFFERENCE - CRUEL AND UNUSUAL PUNISHMENT
> as well as state and federal status and rules . . .

. . .

> On or about October 30, 2010, and September 16, 2011, Defendant Warden
> DANIELS intentionally used false information to place me in the
> ADX super maximum security / USP- HIGH D-B unit prison and recommended
> Mnagement [sic] Variable restriction place on me.  Defendant DANIELS actions
> violated plaintiff OZSUSAMLAR 8th Amendment Rights to U.S. Constitution under
> DELIBERATE INDIFFERENCE – cruel and unusual punishment AS WELL AS
> STATE AND FEDERAL STATUS AND RULES. . . .

> . . . On or about October 15, 2010, start up to November 29, 2011,
> Defendant DANIELS not provide to the other medical problem pain,
> stomach, hemorroidd, acne problem Plaintiff OZSUSAMLAR was not
> rovided with medical while at the ADX super maximum / USP- HIGH D-B
> Unit prison at that time currently worked the ADX Warden Defendant
> DANIELS and Plaintiff life and property **Defendant DANIELS
> responsibility in protect**.  Defendant DANIELS actions violated Plaintiff
> OZSUSAMLAR 8th Amendment Rights to U.S. constitution under
> DELIBERATE INDIFFERENCE — CRUEL AND UNUSUAL
> PUNISHMENT as well as state and federal status and rules. . . .

(Docket No. 38-1 at 9-10).

Plaintiff was warned by Magistrate Judge Boland more than once of the need to

plead personal participation by each of the defendants (see Docket Nos. 3 and 12), yet

despite being given several opportunities to amend his pleading, plaintiff has continued

to fail to do so with respect to Davis and Daniels.  In addition, plaintiff has failed to

establish the objective or subjective components of his Eighth Amendment claims

against them.  His Eighth Amendment claims are vague and conclusory and fail to

allege specific facts that demonstrate defendants acted with deliberate indifference to substantial risk of serious harm.  With regard to his claims concerning the conditions of confinement, he does not describe his conditions while he was confined in ADX or make any allegations that defendants deprived him of "humane conditions of confinement, including adequate food, clothing, shelter, sanitation, medical care, and reasonable safety from serious bodily harm."  Tafoya v. Salazar, 516 F.3d at 916.  With regard to his medical claims, he has not alleged facts to establish that his conditions (i.e., pain, hemorrhoids, and acne) were "sufficiently serious" to trigger the protection afforded by the Eighth Amendment.  For example, he makes no allegation that his conditions were determined by a physician to require treatment, and from his vague conclusory allegations, it does not appear that they were conditions for which a lay person would conclude required medical attention.  Furthermore, he has not alleged any facts to show that the alleged denial of care resulted in substantial harm.  In addition, plaintiff has not alleged any facts concerning the subjective component.  He has not made any allegations that Davis and Daniels even knew he faced a substantial risk of harm and disregarded that risk.  In fact, it appears that his allegations are merely based upon defendants' supervisory roles, and he has not established and affirmative link between defendants and the alleged constitutional violation.

In sum, the court finds that the plaintiff has failed to meet his burden of showing that the defendants' actions violated a constitutional right.  Defendants Davis and Daniels are thus entitled to qualified immunity on the plaintiff's Fifth and Eighth Amendment claims.

**WHEREFORE,** for the foregoing reasons, it is hereby

**RECOMMENDED** that Defendants' Motion to Dismiss (Docket No. 77) be **GRANTED**.

**NOTICE:  Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case.  A party may respond to another party's objections within fourteen (14) days after being served with a copy.  The District Judge need not consider frivolous, conclusive, or general objections.  A party's failure to file and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge, <u>Thomas v. Arn</u>, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions. <u>Makin v. Colorado Dep't of Corrections</u>, 183 F.3d 1205, 1210 (10th Cir. 1999); <u>Talley v. Hesse</u>, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**


Dated: February 6, 2014                     s/ Michael J. Watanabe
      Denver, Colorado                     Michael J. Watanabe
                                        United States Magistrate Judge